**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| BHARI INFORMATION TECHNOLOGY SYSTEM PRIVATE LIMITED, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-13-1480 |
| KOMAL SRIRAM, | * | |
| Defendant. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

This Memorandum Opinion vacates and supersedes the Memorandum Opinion dated October 28, 2013 and disposes of Defendant Komal Sriram's Motion to Dismiss the Amended Complaint, ECF No. 11, and accompanying Memorandum of Points and Authorities, ECF No. 11-4; Plaintiff Bhari Information Technology System Private Ltd.'s Response, ECF No. 13; and Defendant's Reply, ECF No. 14. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendant's Motion to Dismiss shall be GRANTED.

I.  **BACKGROUND**

For purposes of considering Defendant's Motion, this Court accepts the facts that Plaintiff alleged in its Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011). In 1991, Defendant incorporated Ram Pension Consultants, Inc. ("RPC") in the State of Maryland. *See* Am. Compl. ¶¶ 2, 9, ECF No. 10. "RPC is a business process outsourcing ('BPO') company that administers and manages 401-K and other pension plans." Pl.'s Opp'n 2 (citing Sriram Aff. ¶ 8, ECF No. 11-2). Defendant is a United States Citizen residing in India and was the sole owner and shareholder of RPC. Am. Compl. ¶¶ 4, 9. At the time of

incorporation, Defendant "lived full-time in Maryland."  Pl.'s Opp'n 2.  In 2005, Defendant sold RPC to Plaintiff Bhari Information Technology System Private Ltd. ("BITECH"), a Dubai corporation, for more than $375,000.  Am. Compl. ¶¶ 2–3.

From the time of the sale through 2013, Defendant acted as a consultant to RPC, under direction of its new owner, BITECH.  *Id.* ¶¶ 14–15.  Although Plaintiff remitted the payment for the sale, the shares were never transferred.  *Id.* ¶¶ 12–13.  Instead, according to Plaintiff, Defendant used telephone and email communications to divert contracts and business opportunities to other corporations, such as Info-Drive Ltd., a non-party to this case.  *See id.* ¶ 16.  Info-Drive Ltd. is an Indian corporation with a wholly-owned United States subsidiary.  Pl.'s Opp'n 3.

Plaintiff filed this action on May 21, 2013, alleging fraudulent concealment and tortious interference arising out of Defendant diverting customers away from RPC, the company he sold to BITECH.  *See* Compl., ECF No. 1.  Defendant filed a Motion to Dismiss for Lack of Subject Matter and Personal Jurisdiction, ECF No. 8.  On July 22, 2013, in lieu of responding to Defendant's Motion, Plaintiff filed its First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B), adding a RICO claim in addition to the fraudulent concealment and tortious interference claims.  *See* Am. Compl.  I denied Defendant's Motion to Dismiss as moot because Plaintiff had filed an Amended Complaint.  Paperless Order, ECF No. 12.  Then, Defendant filed the pending motion, which has been briefed fully.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This Rule's purpose "'is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

That said, "'factual allegations must be enough to raise a right to relief above a speculative level.'" *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 472–73 (D. Md. 2009) (quoting *Twombly*, 550 U.S. at 545). Particularly, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).

Where the allegations in a complaint sound in fraud, the plaintiff also must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) by "stat[ing] with particularity the

3

circumstances constituting fraud." "The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 780 (4th Cir. 2013). Rule 9(b) requires that Plaintiff *must* allege "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d* § 1297, at 590 (2d ed. 1990)); *see also Biktasheva v. Red Square Sports*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (citing cases). However, Rule 9(b) permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

### III. DISCUSSION

#### A. Motion to Dismiss the RICO Claim (Count I)

RICO "'is concerned with eradicating organized, long-term, habitual criminal activity,'" not "'all instances of wrongdoing.'" *Mitchell Tracey v. First Am. Title Ins. Co.*, No. WDQ-12-1329, 2013 WL 1296390, at *6–7 (D. Md. Mar. 28, 2013) (quoting *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010)). Courts, therefore, must "'exercise caution' to ensure that 'RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions,'" while at the same time "read[ing] the terms of the statute 'liberally' to 'effectuate its remedial purposes.'" *Id.* (quoting *U.S. Airline Pilots*, 615 F.3d at 317 (internal quotation marks omitted)). The Fourth Circuit "will not lightly permit ordinary business contract or fraud

4

disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988). In *Flip Mortgage*, the Fourth Circuit was concerned with the application of RICO to "[a claim that] does not rise above the routine, and does not resemble the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties." *Id.* (citing *Int'l Data Bank v. Zepkin*, 812 F.2d 149 (4th Cir. 1987)).

To state a claim for relief based on a violation of 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The enterprise must affect interstate commerce. *See id.*; *Sterling v. Ourisman Chevrolet of Bowie Inc.*, ---- F. Supp. 2d ----, 2013 WL 1870781, at *5 (D. Md. May 2, 2013) (citing *Martin v. JTH Tax, Inc.*, No. 9:10-cv-03016-DCN, 2013 WL 1282224, at *4 (D.S.C. Mar. 27, 2013)).

*1. Extraterritorial application*

According to Defendant, Plaintiff alleges no conduct or injury in the United States, which precludes the extraterritorial application of RICO. *See* Def.'s Mem. 7. Although Defendant has a connection to a foreign non-party, Info-Drive, Ltd., which has a New York subsidiary, Plaintiff has not alleged that Defendant has any connection to this subsidiary other than that the subsidiary "presumably played a critical role." *Id.* at 7–8. Defendant derived no revenue from Maryland between 2000 and 2005, and has done no business in Maryland since that time. *See* Def.'s Reply 3. The consulting work that Defendant performed for Plaintiff, during which he allegedly diverted business, was performed wholly within India. *Id.* Therefore, according to Defendant, Plaintiff fails to allege an actionable effect on interstate commerce. Def.'s Mem. 9.

5

Last, Defendant claims such an application of RICO would violate the Due Process Clause of the United States Constitution. *Id.* at 9.

In opposition, Plaintiff states that, at the time of the sale, RPC was an American company with American clients and that the money Plaintiff paid for RPC was deposited to an account in Greenbelt, Maryland. Pl.'s Opp'n 6. Further, Info-Drive, Ltd., the company to which Defendant allegedly diverted business, has an account in New York and a New York subsidiary that "presumably played a critical role in this enterprise." *Id.* at 7. Plaintiff cites the Supreme Court in saying extraterritoriality should consider the focus of Congressional concern. *Id.* at 6 (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2884 (2010)). "[T]herefore, in assessing the extraterritoriality of a RICO claim, courts should look at the connection of the pattern of racketeering to the United States." *Id.* (citing *Hourani v. Mirtchev*, No. 10-1618 (TFH), ---- F. Supp. 2d ----, 2013 WL 1901013, at *4–5 (D.D.C. May 8, 2013); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987) ("[T]he heart of any RICO complaint is the allegation of a pattern of racketeering.").

First, in accepting Plaintiff's facts as true, the extent of the connections of this enterprise to the United States is slim, at best. At most, Defendant rents a property in Maryland not alleged to be related to this activity and diverts business to a foreign corporation whose United States subsidiary "presumably" receives a benefit. *See* Pl.'s Opp'n 7. At the time of the sale of RPC, Plaintiff's business was located in Maryland and the proceeds of the sale went to Maryland. *Id.* at 6.

In viewing the facts before me, the alleged instances of fraud and of diverting business, for purposes of RICO, occurred after the sale and wholly in India. That connection is too slim to support the extraterritorial application of RICO. *See Norex Petroleum Ltd. v. Access Indus., Inc.*,

6

631 F.3d 29, 33 (2d Cir. 2010). Plaintiff's scant citations to case law fail to support the application it seeks. Plaintiff points to *Hourani* as standing for the proposition that courts should look at the connection of the pattern of racketeering to the United States. First, that opinion is not binding on this Court. That said, Judge Hogan found, as I find here, that the connections Defendant allegedly possessed with the United States are too slim to support extraterritorial application. In *Hourani*, the Defendant, living in the United States and through his United States corporation, allegedly conspired to publish defamatory websites about the Plaintiff, which were published by foreign media companies. *Hourani*, 2013 WL 1901013, at *1. Judge Hogan found that the enterprise and the pattern of racketeering occurred multi-nationally and that the United States connections could not support extraterritorial application of RICO. *Id.* at *3.

This case is clearer than *Hourani*, as the connections here are far fewer. Defendant lived in the United States only from 1988 to 1991 and owned no property. Sriram Aff. ¶¶ 2, 6. He receives government aid, possesses a driver's license, pays his bills, files tax returns, uses credit cards, and communicates with the United States Embassy, in India. *Id.* ¶ 5. At best, RPC had some clients in the United States and the parties held a couple of meetings in New York. Rahman Aff. ¶¶ 4–5, ECF No. 13-1. The execution of the sales agreement and Defendant's consulting activities, during which time he allegedly diverted business, occurred in India. Sriram Aff. ¶¶ 11, 15. The relevant inquiry is not whether the Defendant possesses any contacts with the United States in the jurisdictional sense, but whether the *enterprise* through which the RICO violations occurred had sufficient contacts with the United States. *See Sedima*, 473 U.S. at 496. Accordingly, even assuming Plaintiff's facts are true, I find that the contacts Plaintiff alleges to exist between the enterprise and the United States are too slim to support extraterritorial application of RICO.

## 2. *Requirement of Pleading with Particularity*

According to Defendant, even if extraterritorial application were proper, this action is an ordinary business contract or fraud dispute to which the application of RICO would be improper under *Flip Mortgage*, 841 F.2d at 538. *See* Def.'s Mem. 7. Defendant argues:

> Plaintiff fails to allege the alleged words used, the method of communication, the dates of the alleged communications, or to whom the communications were made. Indeed, based on the allegations in the Amended Complaint, it is not known how many purported fraudulent communications took place, or when—other than that they occurred at some point or points in the eight year period between 2005 and 2013. That is significant because, among other things, RICO has a four year Statute of Limitations.

*Id.* at 18 (citing Am. Compl., ¶¶ 22–24).

In response, Plaintiff argues that the allegations in the Amended Complaint meet the Rule 9(b) standard. Pl.'s Opp'n 15 ("Plaintiff has sufficiently pled a scheme to defraud in alleging that from 2007–2013, Defendant 'knowingly represented that he was working on behalf of BITECH by furthering the interests of RPC' and 'falsely represented to BITECH that RPC had multiple long-term renewable contracts.' Amended Complaint ¶ 24."). Then, Plaintiff points to two specific instances where Defendant allegedly used email and phone in furtherance of his enterprise. *Id.* Last, Plaintiff argues for a relaxed Rule 9(b) standard for cases regarding fraudulent omissions. *Id.* at 16.

When mail and wire fraud are asserted as the predicate acts for a civil RICO claim, the standards of Rule 9(b) apply. *Willard v. Kunda*, No. JFM-10-326, 2010 WL 4365569, at *3 (D. Md. Nov. 3, 2010) (quoting *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D. Md. 2009)). Applying the traditional Rule 9(b) standard, Plaintiff's allegations clearly are

insufficient. *See id.* Plaintiff does not allege the words or method of communication used, dates, or to whom the communications were made.[1]

Plaintiff cites *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) and *Flynn v. Everything Yogurt*, No. HAR92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993) for the proposition that Rule 9(b) is relaxed for cases involving fraudulent omissions. *See* Pl.'s Opp'n 16. Whether some reduced Rule 9(b) standard applies is a question upon which courts disagree. Even assuming that *Shaw*, 973 F. Supp. at 552, is correct in holding that allegations of fraudulent omissions are subject to a watered-down version of the standard set forth in Rule 9(b), Plaintiff has not satisfied even this relaxed standard. To do so, Plaintiff must, at the least:

> Specify (1) the partial and fragmentary statements of fact that created a duty . . . to speak, (2) who made the statements, (3) when the statements were made, and (4) how she came to rely on them. To withstand dismissal, she needs to make these allegations with particularity and be especially clear about how and when she came to know of the partial disclosures noted in the Complaint and how she relied upon them.

*Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, No. GLR-12-2718, 2013 WL 4501308, at *8 (D. Md. Aug. 21, 2013) (quoting *Hill v. Brush Engineered Mat'ls, Inc.*, 383 F. Supp. 2d 814, 823 (D. Md. 2005)). Plaintiff, in its Amended Complaint, does not make these allegations with the requisite particularity even under the relaxed standard. To the extent Plaintiff particularizes any communications in its Opposition, those acts appear to have occurred outside the statute of

---

[1] Defendant is correct that the dates of the communications are particularly relevant. If *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 149 (1987) (applying a uniform, four-year statute of limitations to certain RICO actions), applies, the only specific allegation made by Plaintiff, the 2007 telephone call, would be outside the four-year statute of limitations. *See* Def.'s Reply 7.

limitations. *See Agency Holding Corp.*, 483 U.S. at 149. Therefore, Plaintiff's RICO claim must be dismissed for failure to state a claim upon which relief can be granted.

### B. Subject Matter Jurisdiction over the Fraudulent Concealment (Count II) and Tortious Interference (Count III) Claims

Originally, Plaintiff filed this action in diversity under 28 U.S.C. § 1332. *See* Compl. ¶ 4. Following Defendant's First Motion to Dismiss, Plaintiff filed this Amended Complaint, invoking federal question jurisdiction under 28 U.S.C. § 1331. The Amended Complaint invokes this Court's supplemental jurisdiction over the fraudulent concealment and tortious interference claims under 28 U.S.C. § 1367. *See* Am. Compl. ¶ 6.

Having found that the RICO claim must be dismissed, I must determine if this Court has subject matter jurisdiction over the remaining state law claims of fraudulent concealment and tortious interference absent the federal question. This action may continue in this Court only if there is some other basis for subject matter jurisdiction. Plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

Plaintiff is a Dubai corporation. Am. Compl. ¶ 3. Defendant is a United States citizen residing permanently in India. *See id.* ¶ 4; Def.'s Mem. 3. Jurisdiction under 28 U.S.C. § 1332 requires complete diversity. *See*, *e.g.*, *Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978). "The alien citizenship on both sides of the controversy destroys diversity." *Gen. Tech. Appls., Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004) (citing *Universal Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002)); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 652 (4th Cir. 2006); *Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 254 (4th Cir. 2009).

Plaintiff does not allege that Defendant is a resident, domiciliary, or citizen of the State of Maryland. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("[I]n order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." (emphasis in original)); *Whitehead v. Grand Duchy of Luxembourg*, 172 F.3d 46, 1998 WL 957463, at *5 (4th Cir. 1998) ("Though diversity jurisdiction extends to suits between United States citizens domiciled in different states and between citizens so domiciled and aliens, it does not include United States citizens domiciled abroad, for they are neither aliens nor citizens of any state."); *Niell v. Salisbury Sch., Inc.*, No. ELH-11-3627, 2012 WL 34021, at *3 (D. Md. Jan. 5, 2012) (citing 13E Wright, Miller & Cooper, *Federal Practice & Procedure* § 3621, at 626–29 (2009 & Supp. 2011)). The Amended Complaint invokes only this Court's federal question jurisdiction and complete diversity does not exist because both parties are foreign. Therefore, Counts II and III of the Amended Complaint shall be dismissed for lack of subject matter jurisdiction.

### C. Personal Jurisdiction

This Court lacks subject matter jurisdiction for the reasons stated above. Therefore, I do not need to reach the arguments regarding personal jurisdiction, which may require an evidentiary hearing to resolve.

### D. Arbitration Agreement

Defendant urges me not to address the Plaintiff's arguments in any event because the arbitration clause in the contract for the sale of RPC requires the Court to dismiss or stay these proceedings pending arbitration. According to Defendant, "The Contract contains an arbitration clause that provides that disputes will be resolved by International Chamber of Commerce ("ICC") arbitration. (Contract ¶ 50, Sriram Aff. Exh. H)." Def.'s Mem. 5. According to

Plaintiff, the agreement provides only that *if* the parties agree to arbitrate, such arbitration shall be in accordance with ICC rules. Pl.'s Opp'n 18. The totality of the dispute resolution paragraph provides: "Arbitration. Any arbitration shall be in accordance with ICC rules." *See* Term Sheet ¶ 50, Sriram Aff. Ex. H, ECF No. 11-1.

In determining whether the parties have agreed to arbitrate the dispute in question, the Court should consider (1) whether a valid agreement to arbitrate between the parties exists and (2) whether the dispute in question falls within the scope of that arbitration agreement. *See Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002). In making those determinations, the Court should grant a motion to dismiss on arbitration agreement grounds only if the terms are free from ambiguity. *See Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992); *see also Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972).

The arbitration agreement at issue is ambiguous. *See* Term Sheet ¶ 50. Any number of readings of this agreement is possible, including those advanced by each party. The issue is not appropriate for resolution on a motion to dismiss where the terms have reasonable ambiguity.

### E. Forum Non Conveniens

Defendant's final argument is that if the Court has jurisdiction, the case should be dismissed on *forum non conveniens* grounds. Def.'s Mem. 21. According to Defendant, Maryland is convenient for neither party; there are no public policy considerations in denying Plaintiff's access to this Court; and Indian, rather than Maryland, courts have the stronger interest in resolving this dispute. *Id.* Plaintiff responds that Defendant has not met his burden of showing an alternate forum. Pl.'s Opp'n 19 (citing *Ferruzzi Italia, S.p.A. v. Trade & Transp., Inc.*, 683 F. Supp. 131, 135 (D. Md. 1988)).

The Fourth Circuit requires that Defendant surmount a heavy burden to achieve dismissal on *forum non conveniens* grounds. *See*, *e.g.*, *SAS Inst., Inc. v. World Programming Ltd.*, 468 F. App'x 264, 265 (4th Cir. 2012). While there is much to suggest that this Court is not a convenient forum, Defendant has not met his burden to show that an adequate alternate forum exists. Defendant's only proffer is the statement that "the courts of India have the interest in settling this dispute." Def.'s Mem. 21. While Indian courts presumably have an interest, that alone is insufficient to show that Indian courts provide an adequate alternate forum. The Fourth Circuit requires a specific showing and Defendant has failed to meet his burden.

## IV.  CONCLUSION

For the reasons explained above, extraterritorial application of RICO is improper considering the allegations of contacts presented in this case. Second, even if extraterritorial application were proper, Plaintiff has not met the heightened standard of Rule 9(b) or the relaxed Rule 9(b) standard in *Shaw*, 973 F. Supp. at 552. This is exactly the type of common business dispute for which the Fourth Circuit does not allow RICO application. *See Flip Mortgage*, 841 F.2d at 538. Accordingly, Count I of the Amended Complaint shall be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.[2]

---

[2] Plaintiff's repeated failures to meet the pleading standards and to invoke this Court's jurisdiction warrant a dismissal with prejudice to prevent the continued burden of requiring the foreign Defendant to appear in Maryland. *See N. Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004) (considering whether the plaintiff has persisted in failing to comply with Rule 8(a)); *see also 180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009) ("The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." (quoting *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985))). Further, future amendments would be futile considering the substantial amount of evidence presented with the pleadings and motions that were reviewed in this decision. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) ("Appropriate reasons to prohibit further amendments of a complaint include . . . futility of amendment." (internal quotation marks omitted)).

Counts II and III shall be DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.

A separate order has issued.

Dated: December 2, 2013

/S/
Paul W. Grimm
United States District Judge

jwr